IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CRAIG U. PELTIER,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ALMAR MANAGEMENT, INC.,<br><br>　　　　Defendant. | CV. NO. 16-00431 DKW-RLP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ALMAR MANAGEMENT, INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT ALMAR MANAGEMENT, INC.'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Craig Peltier brings this action against his former employer, Almar Management, Inc. ("Almar"), for failure to pay wages in accordance with Hawaii Revised Statutes ("HRS") § 103-55 and for breach of contract, as an alleged third-party beneficiary of a contract between Almar and a state agency.   Because no private right of action exists to enforce HRS § 103-55, Almar's Motion for Partial Judgment on the Pleadings is granted as to Count I.   On the state of the current record, however, including the absence of the contract on which Peltier relies, the Court is not able to determine whether Peltier's contract claim is based solely on an alleged violation of HRS § 103-55, and whether permitting such a claim would

enable him to circumvent the lack of a private right of action under that statute itself. Accordingly, Almar's Motion is denied without prejudice with respect to Count II.

## BACKGROUND

Peltier was employed by Almar and ALTRES, Inc. from May 1, 2012 until his termination on March 3, 2014 at the Kewalo Basin Harbor, a commercial small boat harbor controlled by the State of Hawaii. Complaint ¶¶ 8, 12. The state agency responsible for the harbor, the Hawaii Community Development Authority ("HCDA"), contracted with Almar to provide operations and maintenance services. According to Peltier, the March 1, 2009 contract requires Almar to enforce relevant Hawaii Administrative Rules ("HAR") related to Kewalo Basin Harbor and to pay wages to its employees consistent with HRS § 103-55. Complaint ¶¶ 9-10. Peltier asserts that under the statute, Almar and ALTRES were required to pay him "wages of at least what the State would have paid a public employee performing similar work," but failed to do so. Complaint ¶ 13. In particular, he alleges that:

> 14. Almar did not give notice to Plaintiff, either through a workplace posting or on his paycheck, that he was to be paid wages no less than what the State would have paid a public employee performing similar work.
>
> * * * *
>
> 16. During that time period, Plaintiff generally worked six days a week, with Fridays being his off day.

2

17. ALMAR did not post work schedules in advance of each work week.

18. Plaintiff oftentimes was required to work more than eight hours in one day or more than forty hours in a week.

19. Plaintiff would regularly record his hours.

20. Oftentimes his supervisor would unilaterally change the hours Plaintiff reported in an effort to evade the obligation to pay Plaintiff overtime.

21. Plaintiff worked on all legal holidays, but was not paid overtime.

22. During the entire time that he was employed by Almar and ALTRES, Plaintiff was paid a wage less than the wage of a public employee performing similar work.

23. During the time that Plaintiff was employed by Almar and ALTRES, Almar and ALTRES were aware that their employees under the Contract were being paid wages less than the wages of public employees performing similar work.

24. Almar and ALTRES did not take any remedial action towards Plaintiff to address the prior underpaid wages and to make sure that in the future Plaintiff was being paid a wage no less than the wage of a public employee performing similar work.

\* \* \* \*

33. Also, shortly before being terminated, Plaintiff contacted the HCDA by telephone inquiring about the wages that Almar was required to pay him to comply with the Contract and State law.

Complaint. Peltier was terminated by Almar and ALTRES on March 3, 2014 for cause, but Peltier alleges his termination was in retaliation for various protected activities. Complaint ¶¶ 26-44.

Peltier filed his Complaint in the Circuit Court of the First Circuit, State of Hawaii on March 1, 2016.[1] He alleges claims for: (1) violation of HRS § 103-55 (Count I); (2) breach of contract (Count II); (3) violation of HRS § 378-62 (Count III); and (4) termination in violation of public policy (Count IV). Almar removed the matter to this Court on August 4, 2016 and now seeks judgment on the pleadings on Counts I and II.

## STANDARD OF REVIEW

The standard governing a Rule 12(c) motion for judgment on the pleadings is functionally identical to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual

---

[1] On April 29, 2016, Peltier filed a First Amended Complaint against Almar and ALTRES, which was stricken by the Circuit Court on July 14, 2016. Defendant ALTRES was dismissed pursuant to a stipulation on July 29, 2016. *See* Notice of Removal, Ex. 11 (7/14/16 Order) and Ex. 13 (7/29/16 Stipulation).

allegations in a complaint in the light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Under Rule 12(c), "[j]udgment on the pleadings is properly granted when, accepting all factual allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming*, 581 F.3d at 925); *see also Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

## **DISCUSSION**

I.  **Count I: Whether A Private Right Of Action Exists Under HRS § 103-55**

Almar urges the Court to enter judgment in its favor on Count I because no private right of action exists to enforce HRS § 103-55. Count I alleges that:

> 57. HRS § 103-55 applied to the Contract.
>
> 58. Almar and ALTRES were required to pay Plaintiff wages no less than the wages paid to a public employee performing similar work.
>
> 59. During the entire time of his employment, ALTRES and Almar paid Plaintiff wages less than would be paid to a public employee performing similar work.
>
> 60. As a direct and proximate result of ALTRES and Almar's failure to comply with HRS § 103-55, Plaintiff has suffered damages in an amount to be proved at or before trial.

Generally, HRS Section 103-55 requires prospective bidders on State contracts to certify that they will pay employees wages or salaries not less than the wages paid to public officers and employees for similar work. Although subsection (b) specifies that the contracting agency is the enforcement authority for compliance with the statute, Peltier contends that a private right of action can be implied under the relevant three-factor test established by case law. For the reasons detailed below, the Court disagrees.

### A. Legal Standard

The Court applies Hawaii law to determine whether HRS § 103-55 creates a private right of action. *White v. Time Warner Cable, Inc.*, 2013 WL 787967, at *5 (D. Haw. Feb. 28, 2013) ("To determine whether a private right of action exists under Hawaii statutory or regulatory law, the court must determine whether the state legislature intended to create a private cause of action.").

Hawaii courts apply a three-factor analysis to determine whether a private remedy is implicit in a statute not expressly providing one, with the understanding that "'legislative intent appears to be the determinative factor.'" *Alakai Na Keiki, Inc. v. Matayoshi,* 127 Hawaiʻi 263, 285, 277 P.3d 988, 1010 (2012) (quoting *Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc.,* 110 Hawaiʻi 302, 313, 132 P.3d 1213, 1224 (2006)). The three factors are:

> first, whether the plaintiff is one of the class for whose especial benefit the statute was enacted; that is, does the statute create a right in favor of the plaintiff.   Second, this court considers whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one.   Third, whether it [is] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

*Alakai Na Keiki,* 127 Hawai'i at 285, 277 P.3d at 1010 (alterations, citations, and quotations omitted); *see also Muegge v. Wal-Mart Stores, Inc.*, 2013 WL 253531, at *3 (D. Haw. Jan. 22, 2013).

### B. <u>Analysis of Factors</u>

The Court begins its analysis with the statutory text,[2] which provides, in relevant part:

> (a) Before any offeror enters into a contract to perform services in excess of $25,000 for any governmental agency, the offeror

---

[2] Courts apply the same principles of statutory interpretation under federal law, beginning with the language of the statute itself:

> An individual's ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text.   However, an implied right of action is only authorized when there is clear evidence Congress intended such a right to be part of the statute.   *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010).   Thus, the first step in determining whether a statute authorizes a private right of action is an examination of the statutory language itself.   *See Northstar Fin. Advisors, Inc. v. Schwab Invs.,* 615 F.3d 1106, 1115 (9th Cir. 2010).

*White v. Time Warner Cable Inc.*, 2013 WL 787967, at *2 (D. Haw. Feb. 28, 2013).

> shall certify that the services to be performed will be performed under the following conditions:
>
> Wages. The services to be rendered shall be performed by employees paid at wages or salaries not less than the wages paid to public officers and employees for similar work.
>
> Compliance with labor laws. All applicable laws of the federal and state governments relating to workers' compensation, unemployment compensation, payment of wages, and safety will be fully complied with.
>
> (b) No contract to perform services for any governmental contracting agency in excess of $25,000 shall be granted unless all the conditions of this section are met.   Failure to comply with the conditions of this section during the period of contract to perform services shall result in cancellation of the contract, unless such noncompliance is corrected within a reasonable period as determined by the procurement officer.   Final payment of a contract or release of bonds or both shall not be made unless the procurement officer has determined that the noncompliance has been corrected.
>
> It shall be the duty of the governmental contracting agency awarding the contract to perform services in excess of $25,000 to enforce this section.

HRS § 103-55.

Under subsection (b), only the contracting State agency – in this case, the HCDA – is granted explicit authority to enforce HRS § 103-55.   Because the statute does not expressly create a private right of action for individuals, such as Peltier, the Court must determine whether HRS § 103-55 implicitly confers such a right.

### 1.     Class For Whose Benefit HRS § 103-55 Was Enacted

The Court first considers whether Peltier, a wage-earning employee of a state government contractor, "is one of the class for whose especial benefit the statute was enacted; that is, does the statute create a right in favor of [Peltier.]" *Alakai Na Keiki,* 127 Hawai'i at 285, 277 P.3d at 1010. The original purpose of the statute, implemented in its current form in 1965, was to "prevent any possible deterioration of labor standards and to remove the price of labor as a factor in bidding, thereby restricting competition among contractors to 'ability and know-how.'" H. Standing Comm. Rep. No. 1097, in 1965 House Journal, at 810; *see also* S. Standing Comm. Rep. No. 274, in 1965 Senate Journal, at 919 ("The primary purpose of this bill is to extend the principle of the 'Little Davis-Bacon Act' to prevent any possible deterioration of labor standards and to remove the price of labor as a factor in bidding[.]"). Although Peltier is certainly within one of the several classes of persons or entities benefiting from the legislation that enacted Section 103-55, there is no indication that the law was created for the particular benefit of such persons. *Cf. White*, 2013 WL 787967, at *6 ("The law was created for the benefit of the general population of Hawaii and the emerging cable television industry as a whole, not for any particular person or class of people."). Nor is there any indication that the statute creates a right or remedy in favor of Peltier. *See Alexander v. Sandoval*,

532 U.S. 275, 286 (2001) (A court's task is to "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.").

### 2. **Legislative History**

Even assuming that Peltier is one of the class for whose particular benefit HRS § 103-55 was enacted, the second and determinative factor – the legislative history – does not demonstrate any intent to create a private cause of action. *See Muegge*, 2013 WL 253531, at *3 ("Even if the court assumes that Muegge is 'one of the class for whose especial benefit the statute was enacted,' the legislative history does not indicate an intent to allow private causes of action[.]").

The Court begins its review of the legislative history with the 1965 enactment of Act 247, which originated in the Senate as S.B. No. 381.[3] The Standing Committee Reports from the Senate Committees on Labor (No. 274) and Government Relations and Efficiency (No. 558) both state unequivocally that "administration and enforcement shall be placed with the governmental agencies contracting for such services." *See* 1965 Senate Journal at 919, 1058. There is no discussion of private enforcement or the availability of any remedy beyond the

---

[3]The original version of the precursor to HRS § 103-55, enacted in 1907, established the daily minimum pay for certain classes of laborers. 1907 Terr. Haw. Sess. Laws. Act 98, at 170-71. The law in its current form, relating to wages, hours, and working conditions of employees of contractors supplying services to government agencies, was enacted in 1965.

cancellation of the contract by the contracting governmental agency.  *See* S. Standing Comm. Rep. No. 558, in 1965 Senate Journal, at 1058 ("In the event of noncompliance of the above described conditions, the contract will be cancelled.").

In 1985, the statute was amended to include the portion of subsection (b) allowing for the correction of noncompliance "within a reasonable period as determined by the contracting officer."  1985 Haw. Sess. Laws Act 73, § 1 at 120. The purpose of the amendment was to "allow a contractor supplying services to a governmental agency a reasonable period, as determined by the contracting officer, to correct noncompliance with wage scales and labor laws prior to cancellation of a contract[.]"  S. Standing Comm. Rep. No. 948, in 1985 Senate Journal, at 1319; *see also* H. Standing Comm. Rep. No. 452, in 1985 House Journal, at 1200 ("The current statute provides that a contract shall be cancelled if a contract is not in compliance with the requirements of section 103-55, Hawaii Revised Statutes. . . . As received by your Committee, the bill provides for any noncompliance to be corrected within a reasonable time period as determined by the contracting officer. To ensure that any deficiency be corrected as soon as possible, your Committee has amended the bill to provide that the final payment or release of bonds or both shall not be made until the contracting officer has determined that the noncompliance has been corrected.").  Accordingly, the legislative history relating to the 1985

amendment similarly reveals no intent to allow private enforcement or a private remedy for noncompliance with HRS § 103-55.

Among the most significant signs of the Legislature's intent on this issue may be its inaction in 2011 and 2012, when it twice considered and deferred action on H.B. No. 1317. That bill, in relevant part, would have expressly created a private right of enforcement in Section 103-55, by way of newly introduced subsections (e) and (f):

> (e) Any contractor found in violation of this section shall pay a fine of $5,000 per violation to the agency, plus attorneys' fees and costs to the agency or the affected employees for enforcing this section.
>
> (f) Any employer who violates any provision of section 103−55 shall be liable to the employee or employees affected in the amount of their unpaid wages or compensation and in the case of wilful violation an additional equal amount as liquidated damages.

H.B. No. 1317, 26th Leg., Reg. Sess. (2011), *available at* http://www.capitol.hawaii.gov/session2011/bills/HB1317_.htm. H.B. No. 1317 included the following legislative findings:

> the existing language of section 103-55, Hawaii Revised Statutes, while laudatory in purpose, exempts nearly all employees who might possibly benefit from that section of law and contains insufficient provisions for enforcement, rendering it unable to accomplish its express purpose to assure that such contracted services are performed by employees paid at wages or

> salaries not less than the wages paid to public officers and employees for similar work.

*Id.* The primary purpose of the bill was to "require that the wage employees of a contractor providing services to the State of Hawaii and any of the counties be no less than the prorated hourly equivalent of the poverty threshold." *Id.*

The plain language of the proposed bill highlights the absence of similar text in the existing statute. In other words, if the statute, as currently written, already allowed a private right of action, there would have been little need to add much of the language of proposed subsections (e) and (f). H.B. No. 1317, moreover, indicates that the state legislature certainly knew how to make private enforcement explicit, but that explicit language remains absent to this day.

The Court acknowledges that proposed legislation is not necessarily determinative of the issue of legislative intent. H.B. No. 1317 was deferred – therefore, no committee reports were prepared and no committee or floor vote was ever taken. *See, e.g., Bennett v. Yoshina*, 98 F. Supp. 2d 1139, 1150 (D. Haw. 2000) (Noting that Ninth Circuit case law limits "judicial consideration of legislative history that is not contained in official committee reports" in cases dealing with "judicial examination of legislative history as an aid to statutory interpretation"[.]); *Peer News LLC v. City & Cnty. of Honolulu*, 138 Hawaiʻi 53, 71, 376 P.3d 1, 19 (2016) ("To the extent that legislative history may be considered, it is the official

committee reports that provide the authoritative expression of legislative intent. . . . Stray comments by individual legislators, not otherwise supported by statutory language or committee reports, cannot be attributed to the full body that voted on the bill.") (quoting *Wright v. Home Depot U.S.A., Inc.,* 111 Hawai'i 401, 411 n.8, 142 P.3d 265, 275 n.8 (2006) and *Bennett*, 98 F. Supp. 2d at 1150).

However, the Court finds that the legislative history as a whole lacks any clear statement of intent to allow private causes of action for violations of Section 103-55. To the contrary, from the time of enactment to the present, the legislature explicitly charged the contracting governmental agency with enforcement of HRS § 103-55, despite opportunities to create a private right of action. *See also White*, 2013 WL 787967, at *6 (Finding no legislative intent to create an implied private right of action where "[f]rom the outset, the legislature explicitly charged the DCCA director with administration and enforcement of the State Cable Law, and rules promulgated pursuant to it."). "Implying a private right of action on the basis of legislative silence would . . . be a 'hazardous enterprise, at best.'" *Pono v. Molokai Ranch, Ltd.*, 119 Hawai'i 164, 189, 194 P.3d 1126, 1151 (Ct. App. 2008) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979)), abrogated on other grounds by *County of Hawaii v. Ala Loop Homeowners*, 123 Hawai'i 391, 235 P.3d 1103 (2010). *See also Muegge*, 2013 WL 253531, at *3 (Finding no private right of

14

action where "[n]either the statute nor its legislative history expressly indicates that the legislature intended to provide a private cause of action for violations of section 291-58. The committee reports concerning the enactment of the statute are silent as to whether the legislature intended a private cause of action.").

In sum, Peltier has not established the determinative second factor – that the Hawaii legislature intended to create a private right of action for enforcement of HRS § 103-55.

### 3.     Inconsistency With Legislative Scheme

With respect to the third factor, implying a private right of action would be inconsistent with the underlying statutory scheme of agency enforcement, and contrary to the legislative intent discussed above. Courts have generally found that implying a private right of action in a statute that is part of an administrative scheme would undercut legislative goals, and therefore, courts defer to remedies put in place by legislatures or administrative agencies. *See, e.g., Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 783 (1981) (holding that a private right of action under the Davis-Bacon Act would disrupt the balance between the interests of contractors and the interests of their employees); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (the presence of six statutory enforcement provisions provided evidence that Congress did not intend any other means of enforcement).

*Cf. First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1126 (9th Cir. 2000) ("However, where no enforcement mechanism is explicitly provided by Congress or an administrative agency, it is appropriate to infer that Congress did not intend to enact unenforceable requirements. Thus, it is fair to imply a private right of action from the statute at issue.").

### C. Count I Is Dismissed

Application of the *Alakai Na Keiki* three factors indicates that no express or implied private right of action exists to enforce HRS § 103-55. Accordingly, Almar's Motion is granted as to Count I.

## II. Count II: Breach of Contract

Count II alleges that:

> 62. The Contract required Almar to pay its employees a wage no less than the wage paid to a public employee performing similar work.
>
> 63. Plaintiff, an employee of Almar hired to perform[] work required by the Contract, is an intended third party beneficiary of the Contract.
>
> 64. During the entire period of Plaintiff's employment, Almar paid Plaintiff a wage less than the wage paid to a public employee performing similar[] work.

Almar argues that Peltier's breach of contract claim is based on nothing more than Almar's alleged failure to comply with HRS § 103-55. It contends that

allowing Peltier to enforce HRS § 103-55 as a third-party beneficiary of the contract between Almar and the HCDA would open a backdoor to a private right of action to enforcement of the statute, which does not otherwise exist. Although the Court largely agrees with Almar's presentation of the case law on the issue, the relevant contract is not before the Court, and the allegations of the Complaint are not sufficiently clear; therefore, it is not possible to determine whether Count II is barred as a matter of law, as urged by Almar.

Where contracts "simply incorporate statutory obligations," a third-party suit to enforce the contract "is in essence a suit to enforce the statute itself" and is not consistent with the statutory scheme. *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 118 (2011). That is, courts will not allow a third-party breach of contract claim where "[t]he statutory and contractual obligations, . . . are one and the same." *Id.* *See also Grochowski v. Phoenix Construction*, 318 F.3d 80, 86 (2d Cir. 2003) (Holding that when a government contract confirms a statutory obligation, "a third-party private contract action [to enforce that obligation] would be inconsistent with . . . the legislative scheme . . . to the same extent as would a cause of action directly under the statute[.]") (internal quotation marks omitted)); *Brug v. Nat'l Coalition for Homeless*, 45 F. Supp. 2d 33, 41 (D.D.C. 1999) (Holding that where there is no private right of action, plaintiff "cannot circumvent this conclusion by

17

arguing that she is a third-party beneficiary to the contract," as to do so would disrupt the administrative scheme laid out by statute.); *Traylor v. Safeway Stores, Inc.*, 402 F. Supp. 871, 876 (N.D. Cal. 1975) ("It would be obviously destructive of the administrative scheme [] to allow it to be short-circuited" through third-party beneficiary claims.). Here, the Court likewise has reservations regarding the viability of Peltier's breach of contract claim – to the extent the allegations regarding the contract between Almar and HCDA simply mirror a statutory obligation, such a suit would, in essence, seek enforcement of the statute itself, and be inconsistent with the legislative scheme.

In the present dispute, however, the Court cannot determine with certainty whether the contract at issue "simply incorporates statutory obligations" or whether the statutory and contractual obligations "are one and the same." *Astra USA, Inc.*, 563 U.S. at 118. The contract is not attached to the Complaint, Notice of Removal, Almar's Motion, or any other pleading. Nor is Count II pled with the particularity that would allow the Court to make that assessment. Accordingly, although Peltier's breach of contract claim potentially duplicates his Count I claim for violation of HRS § 103-55 – for which there is no private right of action – Count II cannot be read so narrowly for purposes of the instant Motion. Without the benefit of the terms of the contract, the Court cannot discern whether permitting Count II to

18

Case 1:16-cv-00431-DKW-RLP Document 23 Filed 01/17/17 Page 19 of 19 PageID #: 334

proceed would circumvent the unavailability of a private right of action under HRS § 103-55. As a result, Almar's Motion is denied without prejudice as to Count II.

## CONCLUSION

Based on the foregoing, Almar's Motion for Partial Judgment on the Pleadings is granted as to Count I and denied as to Count II.

IT IS SO ORDERED.

DATED: January 17, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

Peltier v. Almar Management, Inc.; Civil No. 16-00431 DKW-RLP; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ALMAR MANAGEMENT, INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**