IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| CRAIG U. PELTIER, | CV. NO. 16-00431 DKW-RLP |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT ALMAR MANAGEMENT, INC.'S RENEWED MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND** |
| vs. | |
| ALMAR MANAGEMENT, INC., | |
| Defendant. | |

**INTRODUCTION**

Almar Management, Inc. ("Almar") renews its Motion for Partial Judgment on the Pleadings with respect to former employee Craig Peltier's claim as a third-party beneficiary of a contract between Almar and a state agency. The Court finds that permitting Peltier's third-party beneficiary claim to proceed, as currently alleged, would be contrary to the Court's prior determination of, and circumvent, the lack of a private right of action to enforce Hawaii Revised Statutes ("HRS") Section 103-55 for the failure to pay wages, because Peltier does not assert a contractual breach independent of the statutory violation. While Almar's Motion is therefore granted with respect to Count II, Peltier is permitted leave to amend to attempt to allege a third-party beneficiary claim within the limits discussed more fully below.

# BACKGROUND

Because the parties and the Court are familiar with the factual and procedural background in this matter, the Court recounts only those matters relevant to the instant Motion. Additional background facts are set forth in the Court's January 17, 2017 Order, which dismissed Peltier's Count I claim for violation of HRS § 103-55 and denied without prejudice Almar's motion for judgment on the pleadings with respect to Count II.[1] *See Peltier v. Almar Mgmt., Inc.*, — F.Supp.3d —, 2017 WL 187137, at *1 (D. Haw. Jan. 17, 2017), Dkt. No. 23.

Peltier was employed by Almar from May 1, 2012 until his termination on March 3, 2014 at the Kewalo Basin Harbor, a commercial small boat harbor controlled by the State of Hawaii. Complaint ¶¶ 8, 12. The state agency responsible for the harbor, the Hawaii Community Development Authority ("HCDA"), contracted with Almar to provide operations and maintenance services.

In Count II, Peltier seeks to enforce the terms of the contract between Almar and the HCDA as a third-party beneficiary. According to Peltier, the contract

---

[1] The Court previously denied Almar's motion without prejudice with respect to Count II because the parties did not provide the relevant contract. As a result, the Court could not determine whether the statutory and contractual obligations "are one and the same." 2017 WL 187137, at *7 (citing *Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 118 (2011)). The Court reasoned that, although Peltier's breach of contract claim potentially duplicates his Count I claim for violation of HRS § 103-55, for which there is no private right of action, without the benefit of the terms of the contract, the Court could not discern whether permitting Count II to proceed would circumvent the unavailability of a private right of action under the statute itself. *See* 2017 WL 187137, at *7.

required Almar to enforce relevant Hawaii Administrative Rules ("HAR") related to Kewalo Basin Harbor and to pay wages to its employees consistent with HRS § 103-55, but that it failed to do so. Complaint ¶¶ 9-10, 13. As detailed more fully below, that contract, effective March 1, 2009, provides in Appendix G ("Request for Proposal [RFP] for Providing Operations and Management Services for Kewalo Basin Harbor"), Section 2.21, that Almar shall comply with Section 103-55 and notify its employees of both the provisions of that section and also of the current wage rates for public employees performing similar work. Almar Ex. A (3/1/2009 Contract), Dkt. No. 31-3. In Section 2.22, the contract provides for price adjustments due to wage increases to public employees and a percentage increase for fringe benefits, if applicable. *Id.* Peltier maintains that these portions of the contract exceed Section 103-55's statutory obligations. Almar, on the other hand, contends that Peltier fails to assert any claims based on contractual provisions independent of Section 103-55 and renews its request for dismissal of Count II.

## **STANDARD OF REVIEW**

The standard governing a Rule 12(c) motion for judgment on the pleadings is functionally identical to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be

false.  *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Under Rule 12(c), "[j]udgment on the pleadings is properly granted when, accepting all factual allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming*, 581 F.3d at 925); *see also Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

## **DISCUSSION**

Almar argues that Peltier's breach of contract claim should be dismissed because it is based on nothing more than its alleged failure to comply with HRS § 103-55.  In opposition, Peltier counters that the contract's provisions (1) requiring Almar to give notice to employees of the requirements of Section 103-55 and (2) allowing Almar to seek a contract price adjustment based in part on the percentage of fringe benefits paid, are substantive obligations, in addition to those required by Section 103-55, that Almar has breached.  Because Count II as currently pled, however, does not sufficiently allege breaches of these provisions or any other breach of the contract independent of the statutory obligations relating to

prevailing wages under Section 103-55, the Court grants Almar's Motion.   Peltier is granted leave to amend to attempt to allege a breach of contract claim, with instructions below.

I.      **Count II Is Dismissed Without Prejudice**

As noted in the January 17, 2017 Order, guided by *Astra USA, Inc. v. Santa Clara Cty., Cal.,* 563 U.S. 110, 118 (2011), where no private right of action exists to enforce a statutory violation, courts will not allow a third-party breach of contract claim where "[t]he statutory and contractual obligations, . . . are one and the same." 2017 WL 187137, at *7 (quoting *Astra,* 563 U.S. at 118).   To the extent Peltier's claim arising from the contract between Almar and HCDA simply mirrors Almar's obligation to pay wages in accordance with Section 103-55, it is "in essence a suit to enforce the statute itself," *Astra,* 563 U.S. at 118, and is inconsistent with the legislative scheme, which does *not* provide a private right of enforcement.

The relevant statute provides in part—

> **Wages, hours, and working conditions of employees of contractors performing services**.   (a) Before any offeror enters into a contract to perform services in excess of $25,000 for any governmental agency, the offeror shall certify that the services to be performed will be performed under the following conditions:
>
> **Wages.**  The services to be rendered shall be performed by employees paid at wages or salaries not less than the wages paid to public officers and employees for similar work.

HRS § 103-55.

Here, Count II alleges that—

> 62. The Contract required Almar to pay its employees a wage no less than the wage paid to a public employee performing similar work.
>
> 63. Plaintiff, an employee of Almar hired to perform[] work required by the Contract, is an intended third party beneficiary of the Contract.
>
> 64. During the entire period of Plaintiff's employment, Almar paid Plaintiff a wage less than the wage paid to a public employee performing similar[] work.

Peltier argues that Count II is a permissible breach of contract claim because the statutory and contractual obligations are not coextensive. According to Peltier, Count II arises not only from the violation of Section 103-55's wage requirements, but also from the notice and fringe benefit requirements in the RFP. The RFP portion of the contract between Almar and the HCDA includes the lone reference to Section 103-55 as follows—

> STATUTORY REQUIREMENTS OF SECTION 103-55, HAWAII REVISED STATUTES (HRS)
>
> Offeror shall complete and submit the attached wage certification by which the Offeror certifies that the services required would be performed pursuant to Section 103-55, HRS.
>
> Offerors are advised that Section 103-55, HRS, provides that the services to be performed shall be performed by employees paid at wages not less than wages paid to public officers and employees for similar work. Offerors are further advised that in

the event of an increase in wages for public employees performing similar work during the period of the Contract, Contractor shall be obliged [to] provide wages not less than those increased wages.

Contractor shall be further obliged to notify his/her employees performing work under this Contract of the provisions of Section 103-55, HRS, and of the current wage rates for public employees performing similar work. The Contractor may meet this obligation by posting a notice to this effect in the contractor's place of business in an area accessible to all employees, or the contractor may include such notice with each paycheck of pay envelope furnished to the employee.

Effective October 1, 2006, the basic hourly wages paid to these State positions are:

| Class | Hourly Rate | Monthly Salary |
|---|---|---|
| **Harbor Agent II** | **$13.35** | **$2,314** |

<u>The above information is provided to the contractor for guidance only</u> and is subject to change in accordance with existing collective bargaining contracts or shall change as contracts are renegotiated. It is the Contractor's responsibility to verify the accuracy of the wage rates contained herein and to provide for changes in the minimum wage rates which must be paid to personnel working on this project at all times. Information on the status of Bargaining Unit (BU) contracts can be obtained from the State Department of Human Resources Development Classification and Compensation Review Division (587-1010).

<u>Contractors are further advised that they are not restricted to hire only those classifications of employees as listed, but are free to employ such other classifications of workers as the contractor deems proper and proposes to use on the Projects</u>, and as may be according to his/her common hiring practice. However, the principal duties of employees other than those listed herein above working on the Project will be matched against those of State workers to determine the closest equivalent State

employee(s) at a rate which is no less than that of the equivalent State employee.

Almar Ex. A, Appx. G, § 2.21. The next portion of the RFP, Section 2.22, provides a mechanism by which Almar may request a price adjustment to keep pace with any wage increase to public employees—

> PRICE ADJUSTMENT DUE TO WAGE INCREASE TO STATE EMPLOYEES
>
> 1. Contractor may apply for price adjustment only if there is a wage increase to public employees.
>
> 2. In addition to the actual dollar amount of wage increase, Contractor may apply for the percentage (%) fringe benefits required by Statute.
>
> However, the resulting fringe benefit shall only be applicable to the actual dollar amount of increase.
>
> * * * *
>
> 6. For this contract, the price adjustment method by which the bid price per hour per worker shall be calculated is as follows:
>
>    a. Bid Price/Hr/Worker = (BPH) for example = $11.00/hr.
>
>    b. Current Hourly Wage Rate = (CHW) for example = $11.00/hr.
>
>    c. New Hourly Wage Rate = (NHW) for example = $11.50/hr.
>
>    d. Hourly Wage Increase to State employees = (NHW) – (CHW) = (HWI), or $11.50 - $11.00 = $0.50/hr.

      e.      Adjusted Bid Price/Hr. to State Employees – (BPH) + (HWI) = ($BP), or $11.00 + $0.50 = $11.50/hr.

If allowable fringe benefits are also requested, then the following method of calculation shall be applied:

      f.      % Total for Allowable Fringe Benefits = (% FB) for example = 18%

      g.      $ Adjustment for Allowable Fringe Benefits – (HWI) x (%FB) = ($AB), or $0.50 x .18 = $0.09

      h.      Adjusted Bid Price/Hr./Fringe Benefits = ($ABP) + ($AFB) = ABPFB, or $11.50 + $0.09 = $11.59

Almar Ex. A, Appx. G, § 2.22.

The contractual provisions excerpted above that are the focus of the parties' dispute do not clearly bar a breach of contract claim as a matter of law—that is, they do not simply incorporate the statutory obligations set forth in HRS § 103-55. They are not one and the same. *Cf. Astra*, 563 U.S. at 118 ("A third-party suit to enforce an HHS-drug manufacturer agreement . . . is in essence a suit to enforce the statute itself [because] . . . [t]he statutory and contractual obligations are, in short, one and the same."). The RFP portions of the contract highlighted by Peltier do not merely recite and confirm statutory requirements, the contract mirroring the statute. To the contrary, the contract, to some extent, sets forth "independent substantive obligation[s]" not found in Section 105-33. *Astra*, 563 U.S. at 119; *see also In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, 2017 WL 539578, at *15 (D.

Or. Feb. 9, 2017) (Distinguishing *Astra* in data-breach litigation, where the relevant agreements were not "government contracts that merely confirm a statutory obligation or opt-in to a federal statutory scheme[, but include] a term that [defendant] has agreed to provide reasonable and adequate data security, including data security that complies with HIPAA as well as with state and local laws and industry standards. This goes beyond merely confirming [defendant's] obligations under HIPAA and thus the fact that HIPAA does not provide a private right of action does not preclude the Court from implying this proposed term."); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 1010 (N.D. Cal. 2016) (Likewise distinguishing *Astra* where the contract allowed defendant to "be held to privacy standards above and beyond the standards required under federal law. In addition, in direct contrast to the contract in *Astra*, where the agreement contained 'no negotiable terms,' the 2014 Amendments include three full paragraphs that allow [defendant] to negotiate with OPM over which best practices [defendant] should implement. . . . As a final point, the consolidated amended complaint alleges that [defendant] breached the contract by failing to comply with various laws, regulations, and—most importantly—'industry standards for data security.' Thus, Plaintiffs' claim clearly reaches beyond the mere statutory violations that were at issue in *Astra*.") (citations omitted).

Even accepting Peltier's position, however, that both the notice provision in Section 2.21 and the price adjustment/fringe benefit allowances in Section 2.22 go beyond what is required by HRS § 103-55, Count II itself *as currently pled* does not sufficiently allege a breach of contract claim beyond the scope of the statutory obligation. Peltier does not mention either Section 2.21 or Section 2.22 in the Complaint, nor does he allege any breach of these obligations in Count II.

With respect to the lack of notice, Peltier does allege that: "Almar did not give notice to Plaintiff, either through a workplace posting or on his paycheck, that he was to be paid wages no less than what the State would have paid a public employee performing similar work," but does not tie the alleged failure to any contractual breach in Count II. Complaint ¶ 14. It appears that Peltier for the first time in his opposition brief frames the lack of notice as a breach of RFP Section 2.21 of the contract between Almar and the HCDA. At the hearing on the Motion, in response to the Court's inquiry regarding Peltier's remedy for the lack of contractual notice to employees, counsel responded that employees would be able to bring to the attention of the contracting agency any violation of the contract in order for the employees' rights to be remedied, *i.e.*, damages in the form of "compensation that was not

properly paid."[2] In other words, an employee, such as Peltier, would receive the wages he or she would have been entitled to under Section 103-55 by means of a breach of contract claim, even though such a direct claim is forbidden under the statute itself. To the extent Peltier's lack-of-notice contract theory represents such an end run around the lack of a private cause of action, Count II fails to state a claim for breach of contract within the permissible contours of *Astra*. Nonetheless, because Count II *itself* does not specifically delineate such a theory, nor mention the contractual provision violated, the Court does not reach the issue beyond noting its concerns with the claim that is not sufficiently pled.[3]

Moreover, the Complaint is silent with respect to the provision for a price adjustment when public employee wages increase or based upon a percentage of fringe benefits allowable, as referenced in Section 2.22 of the RFP. Almar contends that the contract with the HCDA does not contain any requirement that

---

[2] *See also* Mem. In Opp'n at 21 ("Had Mr. Peltier been given notice of Almar's requirements under HRS § 103-55, including the current prevailing wage with respect to his job, Mr. Peltier could have sought the assistance of the HDCA while the Contract was ongoing, which would have resulted in him being paid prevailing wages.").

[3] A breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract. *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, however, the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient . . . the complaint must specify what provisions of the contract have been breached to state a viable claim for relief under contract law.")).

Almar pay its employees fringe benefits and that Section 2.22, like HRS § 103-55, does not require the provision of fringe benefits. Reply at 10 n.2. Rather, Section 2.22 simply allows a contractor to apply for a price adjustment based on the percentage of fringe benefits "required by statute." In any event, as noted, Peltier alleges no factually supported violation of the contract based upon any failure to pay fringe benefits.

Accordingly, Count II as currently pled is dismissed without prejudice, and Peltier is granted leave to amend.

## II. Leave To Amend Is Granted As To Count II

Because amendment of Count II *may* be possible, Peltier is granted limited leave to amend his breach of contract claim, addressing the deficiencies identified in this Order, by no later than July 28, 2017. Although his opposition to Almar's Motion seeks leave to amend to allege two specific breach of contract claims not sufficiently raised in his original Complaint—(1) lack of notice under Section 2.21, and (2) claims for fringe benefits under Section 2.22—Peltier is neither limited nor obligated to raise these specific contractual claims in any amended complaint, should he choose to file one. *See* Mem. In Opp'n at 15-16, 21. Peltier should instead thoroughly research the factual and legal bases for any breach of contract claim, including any available remedies, before electing to file an amended complaint. The Court cautions Peltier to carefully consider whether he can allege

facts stating a cognizable breach of contract claim in any amended complaint he considers filing with this Court.

## **CONCLUSION**

Based on the foregoing, Almar's Renewed Motion for Partial Judgment on the Pleadings is granted as to Count II. Peltier is granted leave to amend to attempt to cure the deficiencies noted in this Order by no later than **July 28, 2017**.

IT IS SO ORDERED.

DATED: June 29, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Peltier v. Almar Management, Inc.*; Civil No. 16-00431 DKW-RLP; **ORDER GRANTING DEFENDANT ALMAR MANAGEMENT, INC.'S RENEWED MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**

14